## Ex parte LAWRENCE LYTTON.

No. A-5815.   Opinion Filed Sept. 26, 1925.
(239 Pac. 270.)

Moss & Farmer, for petitioner.

Frank Hickman, Asst. Co. Atty., for the State.

EDWARDS, J. This is an original application by Lawrence Lytton for a writ of habeas corpus to be admitted to bail. Bail denied.

In the early morning hours of the 1st day of September, petitioner shot and killed Curley Lemmons near Tulsa. A complaint was filed and a preliminary examination had before a judge of the common pleas court of Tulsa county and the petitioner held without bail on a charge of murder. On the 15th of September an application by habeas corpus to be let to bail was filed in the district court before Hon. Luther James, a district judge of the district court of Tulsa county, and bail was denied. On the 18th day of September this application was filed; the petitioner contending that the record of the preliminary, supporting affidavits, and the oral evidence given on this application in this court, discloses that the offense for which the defendant stands charged is bailable, and that the proof is not evident, nor the presumption great, of his guilt of murder, and he prays that this court admit him to bail.

The record, consisting of a transcript of the evidence taken on the preliminary trial, of several affidavits filed in support of this application, and the oral evidence of the petitioner, discloses a state of facts about as follows: That on the 28th day of January, 1925, the petitioner was married to Fay Lemmons, the former wife of the deceased Curley Lemmons, and that said Fay. Lemmons, now Fay Lytton, was divorced from the deceased in July, 1924. The

evidence discloses that she had been a dissolute character; that, subsequent to the marriage of petitioner with the said wife, the deceased associated with her, on one occasion took her riding, and was out on several occasions at the home of the defendant; that the deceased on the 31st day of August, the day prior to which he was killed, was released from the federal jail at Muskogee; and that the petitioner was released from the same jail some 20 days prior to that date. The killing took place at the Crazy Rock Inn, a lunch, sandwich, and soft drink emporium, some two miles or such a matter outside of the city of Tulsa.

The petitioner knew that the deceased was to be released from the Muskogee jail on that day. About 6 o'clock in the afternoon he went to the inn where the killing took place, stayed there until about 11:30, when he left and was gone some two hours, and during which time he drove back to Tulsa, drove about the streets, and then returned. Some 30 minutes before he returned to the inn, the deceased and the wife of defendant came there in a car, went into the lunchroom, seated themselves at a table, and ordered a lunch or drinks. On returning, the petitioner parked his car, took a pistol in his hand, and went to a screen door leading to the lunchroom, through which a waiter had just passed, and which had apparently become latched. Finding the door shut, he went around to a window some 2 or 3 feet from where his wife and deceased were sitting at a table, stepped up to the screen, pointed the pistol at the deceased, and, by his own testimony, said: "Sit still, Curley; don't move." The witness Kennedy, who appears friendly to the petitioner, and who had gone to the inn with petitioner, when he first went there that evening, testified that he said: "Curley, sit still, damn you; don't move, or I will kill you." Thereupon, according to the testimony of the petitioner, which is corroborated to some extent by other witnesses, the deceased jumped up and grabbed his hip, and the petitioner then fired; the

bullet passing entirely through the body from one side to the other. The deceased fled to the back of the house, and petitioner stepped to the screen door and fired two more shots at the fleeing man, neither of which took effect. The deceased ran a short distance, fell, and expired without making any statement. The body and surroundings were not molested until the officers arrived. The deceased was unarmed. There was evidence, principally by the petitioner, that the deceased was a dangerous character and had made threats against the petitioner. The petitioner testifies that he believed the deceased was armed; that he commanded him to sit still, thinking that if he did so there would be no conflict; and that he fired because he believed the deceased was about to draw a weapon.

Offenses against the law are bailable, except capital offenses, when the proof of guilt is evident or the presumption thereof great. Where, in a charge of murder, an accused has been held without bail and application by habeas corpus is made to be let to bail, the burden is on the defendant to show that he is illegally deprived of his liberty; that is, to show that the facts and circumstances surrounding the commission of the offense, unless they appear from the evidence on the part of the state, do not make a case where the proof is evident or the presumption great. And if, upon a consideration of all of the evidence introduced on the application for bail, both for the state and the petitioner, a reasonable doubt is not generated of the applicant's guilt of a capital offense, he is not entitled to bail. Even if there should be a reasonable doubt of the guilt of the accused, yet if, upon an examination of the entire record, the presumption is great that the accused is guilty of a capital offense, he is not entitled to bail.

Here the evidence discloses that the deceased, against the will of the petitioner, was associating with the wife of petitioner, and, although the wife is a witness for the pe-

titioner in this proceeding, there is no evidence of criminal conduct between deceased and the said wife of petitioner. The petitioner certainly had the right to remonstrate against the association of his wife and the deceased and to take her from his company, but in the absence of any act of hostility, or act calculated to lead an ordinarily prudent person to believe that the deceased was about to assault him, there was nothing that would justify him in shooting and killing the deceased for mere association with his wife; and when the petitioner, with his pistol in his hand, approached deceased and killed him in the manner shown by the evidence, the presumption of the commission of a capital offense is great within the meaning of the law.

We do not mean to hold that upon the final trial of this case the evidence may not disclose a state of facts which would not warrant the court in submitting to the jury the element of manslaughter or of self-defense.

We refrain from commenting further on the evidence. Bail is denied.

BESSEY, P. J., and DOYLE, J., concur.